UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
STATE OF NEW YORK,

                Plaintiff,

– against –

MICHAEL ADAMOWICZ III, individually
and as trustee under a deed of trust for the
benefit of Michael Adamowicz IV; ELIZABETH
M. FRASER, individually and as successor under
a deed of trust for the benefit of Bonnie Anne
Fraser and as successor trustee under a deed of
trust for the benefit of Mary Margaret Fraser;
MICHAEL ADAMOWICZ IV; BONNIE ANN
FRASER; MARY MARGARET FRASER GAMEL;
ONE ADAMS BLVD. REALTY CORP.;
NATIONAL HEATSET PRINTING CORP.;
NATIONAL HEATSET, INC.; and RUDY
a/k/a RUDOLPH P. MARCONI,

                Defendants.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

02-CV-3476 (SLT)

**TOWNES, United States District Judge:**

      Plaintiff State of New York brings this action pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and the state common law theories of nuisance and restitution, for the recovery of cleanup costs incurred and to be incurred at the National Heatset Printing ("NHP") Site in East Farmingdale, New York (the "Site"). On March 30, 2011, this Court granted in part and denied in part Plaintiff's motion (Docket No. 215) and Defendants' cross motions (Docket Nos. 216, 217) for summary judgment. (Docket No. 222 ("M&O")). Specifically, the Court dismissed all claims against Michael Adamowicz IV, Bonnie Ann Fraser, and Mary Margaret Fraser Gamel, but found liability established as to One Adams Blvd. Realty Corp. ("OABRCorp") and Michael Adamowicz III (collectively, "OAB Defendants"). The Court held that the outstanding issues for

trial would include (1) liability under federal and state law as to NHP President Rudolph Marconi ("Marconi") and (2) the determination of damages for all claims, with particular attention to the alleged contamination downgradient from the Site.

OAB Defendants thereafter moved for partial reconsideration of the March 30, 2011, M&O pursuant to Local Civil Rule 6.3. (Docket No. 227 ("Defs. Mot.")). By letter dated May 27, 2011, Marconi has joined in the motion. For the following reasons, Defendants' motion is denied.

## I. BACKGROUND

The Court presumes familiarity with the factual background in this matter, as detailed in the M&O.

## II. DISCUSSION

### A. Standard for Reconsideration

It is well settled that whether to "grant or deny a motion for reconsideration lies squarely within the discretion of the district court." Murphy v. First Reliance Standard Life Ins. Co., No. 08-CV-3603 (DRH) (WDW), 2010 WL 2243356, at *3 (E.D.N.Y. June 1, 2010). Additionally, the standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see Local Civ. R. 6.3. For decisions or data to have been "overlooked," they "must have been put before the court on the underlying motion." Chin v. U.S. Postal Service, No. 08-CV-1035 (FB) (CLP), 2009 WL 3174144, at *1 (E.D.N.Y. Oct. 1, 2009) (internal quotation marks and bracketing omitted). A motion for reconsideration therefore is not a vehicle for a "moving party seek[ing] solely to relitigate an issue already decided." Shrader, 70

F.3d at 257. Ultimately, a motion for reconsideration "is generally not favored and is properly granted only upon a showing of exceptional circumstances," Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004), such as to correct "clear error" or to prevent "manifest injustice," Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004). Indeed, a court should "strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent the rule from being used as a substitute for appealing a final judgment." Jones v. Donnelly, 487 F. Supp. 2d 418, 419 (S.D.N.Y. 2007).

**B.    Motion for Partial Reconsideration**

Defendants move for reconsideration "as to whether there is a material issue of fact as to the availability of the 42 U.S.C. § 607(b)(3) third party defense to the OAB Defendants." (Defs. Mot. at 4). Specifically, Defendants assert that certain facts were "misapprehended by the Court" with regard to (1) the timing of the release of hazardous waste at the Site and (2) whether OAB Defendants could establish the "due care" prong of the third party defense. (Id. at 5). The Court addressed the law and facts concerning these issues in section II(B)(4)(b) of the M&O.

**1.    Timing of Release and Bankruptcy Argument**

Defendants argued in their original motion papers that the timing of release is crucial to the case primarily for two reasons. First, Defendants stated that it affected their third-party defense, taking the position that "Defendants had no control and had no contractual relationship over NHP as a Debtor-in-Possession" when the "entities that took possession of the four (4) NHP printing presses, cleaned the equipment with perc, and removed the equipment off Site, or . . . arranged for the transportation of perc to the Site." (Docket No. 217, Attach. 19 at 15). In other words, Defendants relied on the assumption that NHP's filing for bankruptcy in November 1987 severed the contractual relationship with OABRCorp and provided the basis for a third party

3

defense. Defendants reiterated in their reply papers that "any release of perc at the Site was caused either by NHP, after filing for bankruptcy (as NHP-Debtor-in-Possession) or by third parties responsible for the dismantling and cleaning of NHP's equipment sold during the bankruptcy process." (Docket No. 220 at 13). The Court was not, however, persuaded that NHP's filing for bankruptcy severed the contractual relationship before release occurred, observing that the bankruptcy court did not deem the lease agreement rejected until June 17, 1988.[1] (M&O at 5, 25-26). Accordingly, even accepting, arguendo, Defendants' assertion that release of hazardous substances, such as perc, occurred only as late as the period between the bankruptcy filing and the rejection of the lease agreement, Defendants could not claim protection from liability under a third party defense.

Second, Defendants argued that timing was significant because "the State is seeking to hold [them] liable for the costs associated with the investigation and remediation of hazardous substances that were either detected or thought to be present thousands of feet downgradient of the Site." (Docket No. 217, Attach. 19 at 15). The Court agreed that finding more precisely just how early the release occurred is highly relevant to a determination of damages, particularly with regard to downgradient contamination. Indeed, the Court expressly reserved these issues for trial. (Id. at 35).

### 2. Due Care

As to whether Defendants could establish the "due care" prong of the third party defense, the Court noted that even assuming bankruptcy had severed the contractual relationship, Defendants failed to adduce facts demonstrating that they "exercised due care" and "took precautions against foreseeable acts or omissions of any such third party and the consequences

---

[1] Defendants mistakenly state in their motion papers that the lease was deemed rejected in May 1988. (Defs. Mot. at 9).

4

that could foreseeably result." 42 U.S.C. §9607(b)(3)(a), (b); (see M&O at 26). Defendants contend that beginning in "early 1988," OABRCorp took "affirmative measures" to address concerns from regulators that hazardous substances had been disposed at the Site. (Docket No. 217, Attach. 19 at 21). The Court has already addressed these facts and arguments, determining that Defendants failed to show evidence that they "took precautions against foreseeable acts or omissions" of NHP prior to the bankruptcy filing or after the filing but before the lease agreement was deemed rejected.

As noted, the standard for reconsideration is strict. In this case, the Court finds that Defendants have failed to set forth any controlling law or factual matters that the Court overlooked in rendering its decision on the cross-motions for summary judgment.

### III. CONCLUSION

For the reasons set forth above, Defendants motion for partial reconsideration (Docket No. 227) is denied.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: September 13, 2011
Brooklyn, New York

5